JONES, JUDGE:
The claimant, Sandra Miller Casdorph, a typist for the respondent, Department of Public Safety, contends that she was employed by the respondent to perform extra work on her own time in the preparation of a West Virginia Uniform Reporting Guide, a project authorized and directed by the Legislature and financed by a Federal grant of $31,500.00. Lieutenant J. B. Hilliard was Director of the Criminal Identification Bureau to which the project was assigned, and Sergeant O. S. Neely was at that time the Assistant Director of the Bureau and Project Director. Claimant says that Lieutenant Hilliard and Sergeant O. S. Neely asked her to do the extra work and told her that there was an item in the project budget of $500.00 for typing. It was her understanding that she was to be paid the $500.00 for whatever extra work was required on a lump-sum basis. She testified that she worked a couple nights a week and on Saturdays from about the middle of May until July 1, 1970. She kept no record of time but approximated it to be 40 to 50 hours. She used a typewriter furnished her by the respondent. She testified that after the work was done, Sergeant Neely presented her a consulting contract form and asked her to fill it out and sign it, which she did. She was *87 later told that the Attorney General would not approve the contract because it was signed after the work was done.
William David Martin, Assistant Project Director, put the Guidebook together with the assistance of a Mr. Fannin. Typed and printed material was put in a looseleaf book for submission to a printing firm employed to do the composition work. Most of the material for the book was made up of photocopies of pages taken from Reporting Guides of the States of Florida and New Jersey. Of approximately 150 pages in the book 23 were typed, 13 by the claimant and 10 by a Miss Giles, a typist also regularly employed by respondent. Martin said it was possible that the claimant typed some pages over and agreed that the language was somewhat technical and the typing more difficult than average. He thought the retyped pages would not be more than 50% of the work. He knew that she took some of the work home and that 13 pages of the finished work were used in the book, but he had no knowledge of any offer of extra compensation.
Sergeant Neely testified that the claimant was furnished for home use a typewriter and Stenorette tape recorder to catch up on her work when she got behind by reason of illness or other causes. According to Sergeant Neely there was considerable discussion with the claimant and others in the office concerning the allotment of $500.00 for typing, but this was before the Florida and New Jersey books were available and permission was obtained to copy them. He further testified that after it was determined that only a limited amount of typing would be required, there was no discussion or agreement with respect to the portion of the work done by the claimant. Sergeant Neely admits that before the work was finished a form contract was presented to the claimant for her signature and then was submitted to the Attorney General’s Office. He does not remember what, if any, amount of compensation was filled in on the form, but, in any event, the Attorney General’s Office concluded that the contract was not proper and could not be approved.
The mere fact that $500.00 was budgeted in the Federal grant for typing a manual of approximately 150 pages was not authority for anyone to pay out or receive that sum regardless of whether the work was done or not. Considering all of the testimony in this case, there is a strong inference that because there was a $500.00 item in the project for typing, the respondent’s employees agreed to make every *88 effort to obtain that amount of Federal money for the claimant, even after typing outside of regular hours was reduced to less than nine percent of the contemplated amount.
The claimant’s theory of this case is that she and the respondent entered into a contract under which she is entitled to $500.00 from the Federal grant for any amount of extra typing done by her in the preparation of the Uniform Reporting Guide. She may have been misled by statements made to her, but giving due consideration to all of the evidence in this case, the Court is of opinion that such a contract was not made and entered into by the parties. Furthermore, there never was any understanding or agreement that the claimant would be paid out of State appropriations for personal services. Neither is there any evidence of the value of the alleged extra services on a quantum meruit basis; and considering the fact that the claimant was a regular salaried employee of the respondent, we choose not to speculate further in that direction.
In view of all the facts and circumstances developed in this case, the Court is of opinion that the claimant has not proved her claim by a preponderance of evidence, and, accordingly, her claim is disallowed.
Claim disallowed.